UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS LLC, )<br>d/b/a AT&T MOBILITY, )<br> )<br>          Plaintiff, )<br> )<br>vs. )<br> )<br>MONROE COUNTY BOARD OF ZONING )<br>APPEALS and MONROE COUNTY BOARD OF )<br>COMMISSIONERS, )<br> )<br>          Defendants. )<br>_____) | No. __3:20-cv-1327__ |

## COMPLAINT

This action arises out of the unlawful denial of a wireless communications facility siting request by Monroe County, Illinois and its Board of Commissioners and Board of Zoning Appeals. Plaintiff New Cingular Wireless PCS LLC d/b/a AT&T Mobility ("AT&T") for its complaint alleges as follows:

1. The Telecommunications Act of 1996, 47 U.S.C. § 151 *et seq.* (the "Telecommunications Act" or the "1996 Act") preempts State and local decisions that "prohibit or have the effect of prohibiting the provision of personal wireless services," and requires that State and local decisions denying requests to place personal wireless service facilities, such as cell towers, be supported by substantial evidence contained in a written record. 47 U.S.C. § 332(c)(7)(B). The Monroe County Board of Commissioners ("Board of Commissioners") violated § 332(c)(7)(B) when it denied AT&T's application (the "Application") for permission to construct an approximately 155-foot wireless communication monopole (the "Facility") and related equipment at a site ("Site") within a fenced-in, leased portion of a parcel of land located

at 1332 Valmeyer Road, outside the corporate limits of Columbia, Illinois. The Board of Commissioners based their decision on the ruling of the Monroe County Board of Zoning Appeals ("Zoning Board") (collectively, with the Board of Commissioners, the "County"), whose erroneous interpretation of County ordinances contradicted those ordinances as properly interpreted, as well as state and federal law. Attached hereto as Exhibit A is a true and correct copy of the Zoning Board's final written decision denying AT&T's zoning appeal.

2.      AT&T seeks to install the Facility at the Site in order to remedy significant service deficiencies in its personal wireless service coverage in the area. AT&T considered several potential locations for the proposed Facility, but each of the alternatives proved infeasible. AT&T's proposal to place a monopole at the Site is the only feasible option for filling the significant gap in coverage in the area.

3.      The County's actions were not based on substantial evidence contained in a written record, as required by 47 U.S.C. § 332(c)(7)(B)(iii). In addition, the Zoning Board's denial prohibits or has the effect of prohibiting AT&T's provision of personal wireless services, in violation of 47 U.S.C. § 332(c)(7)(B)(i). AT&T thus seeks all appropriate relief pursuant to 47 U.S.C. § 332(c)(7)(B)(v).

4.      Furthermore, the County's denial was in error and a misapplication of the County's ordinances, and violated the restrictions set forth the Illinois Counties Code, namely 55 ILCS 5/5-12001.1, which limit the standards a county can implement to approve or deny a telecommunications carrier's application. The County's denial violated those standards by erroneously prohibiting AT&T from installing the Facility on a leased parcel of land, adjacent to which the landlord operated a storage facility. Furthermore, the County's interpretation of its ordinance effectively prohibits telecommunications carriers from installing wireless towers on a

substantial amount of commercial properties, which is the very type of property that the Illinois Counties Code explicitly prefers for tower installations.

## THE PARTIES

5. Plaintiff New Cingular Wireless PCS LLC d/b/a AT&T Mobility (referred to hereinafter as AT&T) is a Delaware limited liability company. It is licensed to conduct business in the State of Illinois and operates wireless communications facilities throughout the State of Illinois. New Cingular Wireless PCS LLC is indirectly wholly owned by AT&T Inc., subsidiaries and affiliates of which provide wireless communication services nationwide.

6. Defendant Monroe County Board of Zoning Appeals is a duly constituted board of zoning appeals established under 55 ILCS 5/5-12009 of the Illinois General Assembly with jurisdiction over all unincorporated land within Monroe County and with an office at 100 S. Main St., Waterloo, IL 62298.

7. Defendant Monroe County Board of Commissioners is a duly constituted board with jurisdiction over local government policy decisions within Monroe County and with an office at 100 S. Main St., Waterloo, IL 62298.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to (a) section 332(c)(7)(B)(v) of the Telecommunications Act because AT&T has been adversely affected and aggrieved by the Zoning Board's denial of its Application and (b) 28 U.S.C. § 1331 because this action presents a federal question under the Telecommunications Act.

9. This Court may exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over AT&T's claims made pursuant to Illinois law because those state law claims are so related to the federal claims as to form part of the same case or controversy.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because defendants reside in this district and the events and/or omissions giving rise to AT&T's claims arose in this judicial district.

## FACTS

### I. Background

11. AT&T and its affiliates provide wireless voice and data products and services to customers nationwide, including "personal wireless services" within the meaning of Section 332 of the Telecommunications Act, 47 U.S.C. § 332.

12. The licenses authorizing AT&T to provide wireless service in Monroe County were issued by the FCC pursuant to the Federal Communications Act, as amended. The Act establishes a national policy to "make available, so far as possible, to all people of the United States, without discrimination . . . a rapid, efficient, Nation-wide and worldwide wire and radio communications service with adequate facilities at reasonable charges for the purposes of national defense [and] for the purpose of promoting safety of life and property through the use of wire and radio communications." 47 U.S.C. § 151.

13. Wireless service is important to the public safety and for consumer convenience. There are now more wireless subscriptions than landline telephone subscriptions in the United States. At present, the number of landline telephone subscribers across the nation is declining every year while the number of wireless subscribers increases.

14. For many Americans, wireless devices have become an indispensable replacement for traditional landline telephones. Even when Americans maintain both types of service, they are opting increasingly to use wireless over their landline.

15. For Americans living in "wireless only" homes and working in "wireless only" businesses, cell phones are their only lifeline in emergencies.

16. To meet the policy goals established by Congress, and provide personal wireless services to local businesses, public safety entities, and the general public, AT&T must consistently update its technology, facilities, and network to keep up to date with customers' ever-growing demand for mobile services, including mobile data service, wireless phone coverage, and emergency services communications.  Among other things, AT&T must create and maintain a network of "cell sites," each of which consists of antennas and related equipment designed to send and receive radio signals.

17. Wireless devices using all-digital technology operate by transmitting a radio signal to antennas mounted on a tower, pole, building, or other structure.  The antennas feed the signals to electronic devices housed in a small equipment cabin or base station.  The base station is connected by microwave, fiber optic cable, or ordinary telephone wire to a base station controller subsequently routing the calls throughout the world.

18. In order to provide reliable service to a user, coverage must overlap in a grid pattern resembling a honeycomb.  In order for the entire network to be operational, there must be properly placed cell sites installed and functioning so that reliable coverage can be realized.  Only when the entire system is operational will a user have service and be able to partake in uninterrupted conversations throughout a given territory.  If there is no functioning cell site within a given area, there would be no service for customers within that area and mobile customers who travel through the area will experience an unacceptable level of dropped calls.

19. When there is a need to improve coverage in a specific area, AT&T's engineers produce a search ring, identifying the area within which a wireless facility of the necessary

5

height must be located or upgraded. The study takes into account the topography of the land, the coverage boundaries of neighboring cells, and other factors.

20. Within the Zoning Division of the Illinois's Counties Code are provisions granting Illinois counties limited authority to regulate the telecommunications facilities pursuant to the explicit standards and requirements therein. *See* 55 ILCS 5/5-12001.1.

21. Section 55 ILCS 5/5-12001.1, provides, *inter alia:*

   a. "[T]he county board or board of county commissioners of any county shall have the power to regulate the location of the facilities . . . of a telecommunications carrier . . . established outside the corporate limits of cities . . . The power shall only be exercised to the extent and in the manner set forth in this Section." 55 ILCS 5/5-12001.1(a).

   b. Telecommunications carriers should place the highest priority on "non-residentially zoned lot[s]" when choosing locations for telecommunications facilities. 55 ILCS 5/5-12001.1(d)

   c. "A facility may be located on the same zoning lot as one or more other structures or uses without violating any ordinance or regulation that prohibits or limits multiple structures, buildings, or uses on a zoning lot." 55 ILCS 5/5-12001.1(f)(2)

   d. The reasonableness of the County's adverse decision concerning AT&T's facility is subject to judicial review without any presumption of validity. 55 ILCS 5/-12001.1(f)(9).

   e. In Illinois counties with a population of less than 180,000 (such as Monroe County), a telecommunications facility is deemed permitted if it satisfies

      the height and horizontal separation requirements set forth in 55 ILCS 5/-12001.1(g)(1).

    f. If a facility does not satisfy said requirements, the county board is to hold a meeting "no later than 75 days after submission of a complete application by the telecommunications carrier. If the county board fails to act on the application within 75 days after its submission, the application shall be deemed to have been approved. No more than one public hearing shall be required." 55 ILCS 5/-12001.1(g)(2).

22. Monroe County has enacted certain ordinances with respect to the siting of telecommunications facilities within the County. *See* Monroe County Zoning Code of Ordinances, § 40-9-1 – § 40-9-3 and § 41-1-1 – § 41-2-1[1] ("Zoning Code").

## II. AT&T's Zoning Application

23. AT&T has significant service deficiencies in its wireless network coverage in Monroe County.  Specifically, AT&T's coverage in the area around the proposed Facility is stressed and is causing service disruptions for local customers. Due to the continued population and commercial growth in the area, the coverage issues will only get worse over time.

24. The Site of AT&T's proposed Facility would be located within a fenced-in, leased portion of the 1332 Valmeyer parcel. The owner of the subject parcel currently maintains a self-storage facility on a separate portion of the parcel.

25. Placing the proposed Facility, a 155-foot monopole, at the proposed Site would alleviate the issues currently experienced and to be experienced with respect to AT&T's wireless

---

[1] The Monroe County Code of Ordinances contains apparently duplicative ordinances with respect to "Communication Structures" (§ 40-9-1 – § 40-9-3) and "Communication Support Structures and Antennas" (41-1-1 – § 41-2-1).

coverage. The Site is centrally located within the area in question, and is zoned MB2, where communications facilities are permitted under the Zoning Code.

26. The Zoning Code notes that "[c]ommunication support structures and antennas may be permitted in all zoning districts…" The Ordinance requires that a proposed tower meet certain requirements and that the tower owner make certain submissions as part of a zoning application, including a full site plan.

27. AT&T's site acquisition representative submitted a Zoning Application for the Proposed Tower on April 12, 2019. AT&T's application satisfied the Zoning Code's submission requirements, and demonstrated that the Facility would address the substantial service issues in the area immediately surrounding the Facility.

28. The search for an acceptable alternative site included researching any existing tall structures (buildings, other towers, water towers) within one mile of the proposed location.

29. When attempting to remedy a gap in service coverage, AT&T seeks where possible to co-locate its antenna facilities on existing towers or other existing suitable structures.

30. Here, there is no existing tower or other tall structure upon which AT&T could co-locate its facilities in order to remedy the service deficiencies.

### III. The Board of Commissioner's Hearing, Rehearing, and Zoning Administrator's Decision

31. On November 4, 2019, the County's Board of Commissioners held a public hearing on AT&T's April 12, 2019 application. After a presentation from AT&T representatives and remonstrations from the public, the Board of Commissioners tabled its decision on the application, and held a second public hearing on August 3, 2020.

32. During the August 3, 2020 hearing, the Board of Commissioners requested that the County Zoning Administrator interpret a portion of the Zoning Code, namely § 40-9-3(B)(1)

and § 41-2-1(B)(1), which both state "No public office, or principal repair or storage facilities shall be maintained in connection with the site."

33. AT&T argued that the referenced provision was intended only to prevent telecommunications carriers from maintaining significant additional operations in addition to the telecommunications facility itself, such as operating a company vehicle repair operation, or commercial sales office, or a company equipment storage program. However, the County Zoning Administrator interpreted the provisions as prohibiting AT&T from installing the proposed Facility at the Site because the owner of the larger parcel operates a self-storage business on a portion of the parcel, despite (a) the storage facility having no commercial relation to AT&T's business operations, (b) AT&T having no intention to operate a storage facility of any kind in connection with the Facility, and (c) the leased premises constituting the Site for the Facility being fenced off and separated from the self-storage business.

34. The Board of Commissioners deferred further discussion on or determination of AT&T's application while AT&T pursued an appeal of the Zoning Administrator's interpretation. AT&T filed an appeal with the Zoning Board shortly after the August 3, 2020 hearing.

### IV. The Zoning Board's Hearing and Decision

35. On September 9, 2020, the Zoning Board held a public hearing on AT&T's appeal of the Zoning Administrator's decision. AT&T argued that the Zoning Administrator's interpretation of the Zoning Code was erroneous and, if it was not erroneous, the Zoning Code likely violated Illinois and federal law.

36. The Zoning Board also heard from remonstrators who voiced concerns about the location of the proposed Facility. The Zoning Board then voted to deny AT&T's appeal, with a

vote of two (2) in favor of overturning the Zoning Administrator's interpretation, two (2) against overturning the decision, and one (1) abstention.

37. At a public meeting on October 5, 2020, the County Board of Commissioners verbally denied AT&T's application in light of the Zoning Board's determination. The meeting minutes for this meeting were published on the County website on December 2, 2020.

38. On November 10, 2020, the Zoning Board approved and issued a formal written decision, which summarized the statements made by various parties during the September 9, 2020 hearing, and noted the Zoning Board's vote tally. *See* Exhibit A hereto.

## COUNT I
### (The Federal Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) - Substantial Evidence)

39. AT&T incorporates by reference the allegations in each of the paragraphs set forth above.

40. Although the 1996 Act preserves local zoning authority over the siting of wireless facilities, 47 U.S.C. § 332(c)(7)(A), "the method by which siting decisions are made is now subject to judicial oversight." *Cellular Tel. Co. v. Town of Oyster Bay,* 166 F.3d 490, 493 (2d Cir. 1999). "Therefore denials subject to the Act are reviewed by a court more closely" than other zoning decisions. *Id*. Among other things, "[i]f a decision is not supported by substantial evidence, § 332(c)(7)(B)(iii), or if it effectively prohibits the provision of wireless service, § 332(c)(7)(B)(i)(II), then under the Supremacy Clause of the Constitution, local law is pre-empted in order to effectuate the Act's national policy goals." *Second Generation Props. L.P. v. Town of Pelham*, 313 F.3d 620, 627 (1st Cir. 2002).

41. Pursuant to 47 U.S.C. § 332(c)(7)(B)(iii), "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal

wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."

42. The Zoning Board's decision to deny AT&T's appeal, and the Board of Commissioners' subsequent denial of AT&T's application, violate 47 U.S.C. § 332(c)(7)(B)(iii) because the decisions are not supported by substantial evidence in a written record. The record does not contain substantial evidence to justify the decision issued by the Zoning Board on November 10, 2020. In that regard, there is no evidence, much less substantial evidence in a written record, that AT&T would be maintaining a storage facility "in connection with" the Site, as the storage facility that is located elsewhere on the parcel containing the Site has no commercial or operational relationship with the AT&T's facility.

43. The County's erroneous interpretations and decisions have caused and will continue to cause AT&T irreparable harm.

44. AT&T is entitled to relief under the Telecommunications Act ordering the Zoning Board to approve AT&T's appeal, and ordering the Board of Commissioners to thereafter approve AT&T's application and other permits required to install, operate, and maintain the Facility.

**COUNT II**
**(The Federal Telecommunications Act of 1996,**
**47 U.S.C. § 332(c)(7) -  Effective Prohibition)**

45. AT&T incorporates here by reference the allegations in each of the paragraphs above.

46. Local authority over zoning and land use matters cannot be used to "prohibit or have the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

11

47. The Telecommunications Act requires local zoning authorities to allow carriers to resolve significant coverage issues in the coverage of their wireless networks.

48. AT&T has significant coverage issues in its wireless network and provision of personal wireless services in Monroe County.

49. AT&T's proposed Facility at the Site represents the only feasible and least intrusive means of remedying AT&T's significant gap in its personal wireless services coverage.

50. The County's interpretations and decisions violate Section 332(c)(7)(B)(i). The denial of AT&T's application has the effect of prohibiting the provision personal wireless service in the relevant area.

51. The County's decisions have caused and will continue to cause AT&T irreparable harm.

52. AT&T is entitled to relief under the Telecommunications Act ordering the Zoning Board to approve AT&T's approval and to provide permits required to install, operate, and maintain the Facility.

## COUNT III
## REQUEST FOR JUDICIAL REVIEW OF ZONING DECISION

53. AT&T incorporates here by reference the allegations in each of the paragraphs above.

54. The County's interpretation of the Zoning Code and related actions and decisions described herein improperly prohibit AT&T from proceeding with installation of the Facility at the commercially zoned Site.

55. The County's interpretation of the Zoning Code and related actions and decisions described herein violate the requirements and standards of 55 ILCS 5/5-12001.1.

56. Among other violations, the County's decision is founded on the erroneous belief that the Zoning Ordinance prohibits installation of a communications tower on any parcel of land whereupon a "public office, or principal repair or storage facilit[y]" is located. Prohibiting installation of communications towers on sites with "public offices" and "storage facilities" would effectively restrict telecommunications carriers from pursuing tower installations at countless non-residentially zoned lots that contain such offices or facilities, a result which squarely subverts the siting preferences of 55 ILCS 5/5-12001.1(d).

57. AT&T has exhausted all available remedies under applicable administrative review laws and ordinances, and requests judicial review of this decision.

58. The timeliness and propriety of the County's adverse decision concerning AT&T's facility is subject to de novo judicial review without any presumption of validity. 55 ILCS 5/-12001.1(f)(9); 55 ILCS 5/5-12012.1(a).

## COUNT IV
## VIOLATION OF 55 ILCS 5/5-12001.1

59. AT&T incorporates here by reference the allegations in each of the paragraphs above.

60. In the alternative to Count III, if the County's interpretation of the Zoning Code is proper (*i.e.*, the Zoning Code does, in fact, restrict installation of telecommunications towers on lots where separate business have public offices, or principal repair or storage facilities), the Zoning Code would have the effect of substantially prohibiting the provision of personal wireless service in the relevant area in violation of 55 ILCS 5/5-12001.1. The Zoning Code is therefore preempted by the requirements of 55 ILCS 5/5-12001.1.

61. AT&T is entitled to judicial review and relief ordering the Zoning Board to approve AT&T's application and other permits required to install, operate, and maintain the Facility.

## PRAYER FOR RELIEF

WHEREFORE, AT&T respectfully prays that this Court grant it relief as follows:

1. Permit expedited review of the matters set forth in this Complaint;

2. Enter an order declaring the County's decisions violate and are preempted by 47 U.S.C. § 332(c)(7);

3. Enter an order declaring the County's decisions violate and are preempted by 55 ILCS 5/5-12001.1;

4. Enter an order requiring the County to approve AT&T's Application and authorize AT&T to install its proposed Facility at the Site and to issue all other permits required to install, operate, and maintain the Facility; and

5. Order such other relief as the Court deems appropriate.


Dated: December 10, 2020                    Respectfully submitted,

                                            By: /s/ Luke G. Maher
                                                Luke G. Maher
                                                Norton Rose Fulbright US LLP
                                                7676 Forsyth Blvd., Suite 2230
                                                St. Louis, Missouri 63105
                                                Telephone: (314) 505-8800
                                                Facsimile: (314) 505-8899
                                                luke.maher@nortonrosefulbright.com

                                            Attorneys for Plaintiff