IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, d/b/a AT&T MOBILITY,<br><br>**Plaintiff,**<br><br>v.<br><br>MONROE COUNTY BOARD OF COMMISSIONERS and MONROE COUNTY BOARD OF ZONING APPEALS,<br><br>**Defendants.** | Case No. 3:20-CV-1327-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a Motion for Summary Judgment filed by Plaintiff New Cingular Wireless PCS, LLC d/b/a AT&T Mobility ("AT&T") (Doc. 23). AT&T seeks summary judgment with respect to Counts I, III, and IV of its Complaint against Defendants Monroe County Board of Zoning Appeals ("Zoning Appeals Board") and Monroe County Board of Commissioners ("Board of Commissioners").

## BACKGROUND

AT&T, a wireless telecommunications provider, identified deficiencies in its wireless network in Monroe County, Illinois (Doc. 23-1, ¶¶ 3, 8). To strengthen its coverage and rectify the deficiencies, AT&T applied for a Permit for Communication Support Structures in Monroe County, Illinois, on April 12, 2019 (Docs. 20, ¶ 4; 20-3). In the application, AT&T proposed a location for a 155-foot monopole tower with accompanying telecommunications equipment (Doc. 20, ¶ 5). The proposed location is a 50-foot by 70-foot fenced-in, portion of

land at 1332 Valmeyer Road (parcel pin number 04-20-200-002-000) that AT&T would lease (*Id.* at ¶ 5, 10). The leased area is not a separate parcel, but is a part of the overall plot of land (*Id.* at ¶ 6). Under Monroe County Zoning Code, the proposed land is zoned as MB2 which permits communications facilities (*Id.* at ¶ 7). Currently, the owner of the proposed plot of land independently maintains a self-storage facility on an area outside the leased area (*Id.* at ¶¶ 8, 11).

To consider the merits of AT&T's application, the Board of Commissioners held two public hearings on November 4, 2019, and August 3, 2020 (*Id.* at ¶¶ 14-17). During the latter, the Board requested that County Zoning Administrator Chris Voelker interpret Section 40-9-3(B)(1) of the Zoning Code (the "Ordinance") (*Id.* at ¶¶ 18, 19). The Zoning Code instructs that "[c]ommunication support structures and antennas may be permitted in all zoning districts[.]" (Doc. 20-2, p. 3). The Ordinance dictates that, "[n]o public office, or principal repair or storage facilities shall be maintained in connection with the site." (*Id.*).

At the August hearing, AT&T argued that the Ordinance intends to prevent telecommunications carriers from maintaining significant additional operations aside from the telecommunications facility itself, such as operating a company vehicle repair operation, commercial sales office, or a company equipment storage program (Doc. 20, ¶ 20). The Zoning Administrator concluded, however, that the Ordinance prohibited AT&T from installing its proposed tower "since a storage facility is maintained in connection with the building site." (Doc. 20-5, p. 3). AT&T appealed (Doc. 20, ¶ 22).

On September 9, 2020, the Zoning Appeals Board held a public hearing on the appeal (*Id.* at ¶ 23). For the appeal, AT&T argued that the Zoning Administrator's interpretation of the Ordinance was erroneous and, even if not, the Ordinance likely violated Illinois and

Federal law. The Zoning Board voted to deny the appeal and affirm the interpretation[1] (*Id.* at ¶¶ 27-28). At another public meeting on October 5, 2020, the Board of Commissioners voted unanimously to uphold the decision of the Zoning Administrator denying AT&T's application because the parcel of land contains a storage facility (*Id.* at ¶ 29).

The Zoning Board issued a formal written decision in November 2020, summarizing the September hearing, which noted the Zoning Board's vote breakdown and listed the Zoning Administrator's ordinance interpretation as the sole reason for the application denial (*Id.* at ¶¶ 32, 33). The minutes for the September meeting were published on the County website in December 2020 (*Id.* at ¶ 30).

On December 10, 2020, AT&T initiated this action alleging that the Board of Commissioners and Zoning Appeals Board unlawfully denied its request to build a wireless communications facility (Doc. 1). AT&T alleges that the County's decision violates the Federal Telecommunications Act (Counts I and II) and requires judicial review (Count III), and that the Ordinance, as interpreted by the County, violates the Illinois Counties Code (Count IV). AT&T now moves for summary judgment as to Counts I, III, and IV and asks the Court to review, vacate, and reverse the Defendants' decision to deny the application.

## SUMMARY JUDGMENT MOTION

The posture of this case is worth discussing. AT&T filed a partial motion for summary judgment. Defendants did not file a cross-motion, but responded to AT&T's motion. The issues before the Court are whether the Board's interpretation of the relevant Ordinance was reasonable as a matter of law, whether the Ordinance conflicts with Illinois law, and whether

---

[1] The Zoning Board voted two in favor of overturning the Zoning Administrator's interpretation and two against overturning the interpretation with one abstention (Doc. 20, ¶ 27).

substantial evidence supported the Board's denial. These are all questions that can be decided as a matter of law, as there are no genuine issues of fact in dispute.² Because AT&T moved for summary judgment, if the Court finds against AT&T on any count, the Court must *sua sponte* grant summary judgment to Defendants. This is odd. While the Court may *sua sponte* grant summary judgment to the non-moving party when there has been a motion for summary judgment but no cross-motion, the practice is not encouraged. *International Union of Operating Engineers, Local 150, AFL-CIO v. Village of Orland Park*, 139 F. Supp. 950, 957 (N.D. Ill. 2001); *Goldstein v. Fidelity & Guar. Ins. Underwriters*, 86 F.3d 749, 751 (7th Cir. 1996). The practice can be proper when a court agrees there are no material factual disputes but is compelled to enter judgment in the non-movant's favor, so long as the movant is afforded necessary safeguards, like notice that summary judgment is being considered. *Goldstein*, 86 F.3d at 751; *see also Golden Years Homestead, Inc. v. Buckland*, 557 F.3d 457, 461 (7th Cir. 2009). Additionally, it would be unnecessary to invite Defendants to file a motion for summary judgment, as such practice would be redundant and unnecessary due to the nature of this case.

This action arises as a review of a zoning board denial. As such, the standard of review is not whether a genuine issue of material fact exists pursuant to Rule 56, but rather, whether the Monroe County Board of Commissioners and Zoning Appeals Board made a decision supported by "substantial evidence." FED. R. CIV. P. 56(a); 47 U.S.C. § 332(c)(7)(B)(iii) ("Any decision by a State or local government or instrumentality thereof to deny a request to place,

---

² While Defendants state that most of the facts are not in dispute, they claim that the inferences to be drawn from those facts are in dispute (Doc. 30, p. 3); however, this is a review of a zoning board decision—the Board's decision and the facts surrounding it are in the record.

construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."). Essentially, the district court serves in an appellate function where the trial of sorts has already occurred through the local board's decision. *See PrimeCo Personal Communications v. City of Mequon*, 242 F. Supp. 2d 567, 574 (E.D. Wis. 2003), *aff'd*, 352 F.3d 1147 (7th Cir. 2003).

Instead of getting tangled in this strange web, the Court will construe AT&T's motion for summary judgment as a motion for an order reversing the Board's denial, and Defendants' response as a request for affirmance.[3]

## DISCUSSION

### I.   Count I – Substantial Evidence under the Federal Telecommunications Act ("FTA")

AT&T asserts that Defendants failed to comply with the FTA's requirement to provide a written record explaining the rationale and substantial evidence supporting the denial. On the contrary, Defendants stress that the Board meeting minutes satisfy the low standard for a written record. Because the denial here is straightforward, Defendants assert that no extensive detail or analysis was needed to ensure AT&T and a reviewing court could understand the reasons for denial.

The TCA requires that a local board's decision "to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). Essentially, localities must provide reasons when they deny cell phone tower siting applications. *T-Mobile South*,

---

[3] Defendants, in their response, state that the County's decision "should be affirmed" unless clearly erroneous. As such, it seems Defendants understand what disposition of this motion would entail (Doc. 30, p. 3).

*LLC v. City of Roswell, Ga.*, 574 U.S. 293, 302 (2015). These reasons need not be elaborate or even sophisticated, but rather simply clear enough to enable judicial review. *Id.* The requirement of substantial evidence review under the TCA does not create a substantive federal limitation upon local land use regulatory power. *VoiceStream Minneapolis, Inc. v. St. Croix County*, 342 F.3d 818, 830 (7th Cir. 2003). Rather, the substantial evidence test acts as a procedural safeguard centrally directed at whether a local zoning authority's decision is consistent with the applicable local zoning requirements. *Id.* Further, this test is highly deferential to the local board. *Id.*

As with the standard of review used by courts to review an administrative agency's decision, only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" is required. *Id; see also Aegerter v. City of Delafield, Wisconsin*, 174 F.3d 886, 889 (7th Cir. 1999). Likewise, the party seeking to overturn the local zoning board's decision bears the burden of proving that the decision is unsupported by substantial evidence. *VoiceStream,* 342 F.3d at 830. A local zoning board's decision is not supported by substantial evidence, for example, when a generalized expression of concern regarding aesthetics of a telecommunications tower is the only basis for denial recorded. *Id.* In determining whether the evidence before an agency was substantial, a court views the record in its entirety and takes account of evidence unfavorable to the agency's decision. *See American Textile Mfr. Inst., Inc. v. Donovan*, 452 U.S. 490, 523 (1981). A locality may rely on detailed meeting minutes to communicate its decision, although writing a short statement providing its reasons can help avoid prolonging litigation. *T-Mobile South, LLC,* 574 U.S. at 303.

Here, the record on review contains minutes from the Board of Commissioners'

meetings on November 2, 2019, August 3, 2020, and October 5, 2020, as well as the minutes of the Zoning Board of Appeals hearing on September 9, 2020 (Docs. 20-4, 20-5, 20-6, 20-7, 20-8). The minutes contain a brief description of the happenings of the meeting, along with a summary of the decision and information considered.

The Zoning Appeals Board decision (Doc. 20-6) provided AT&T a clear description of the basis for the denial. As an initial note, the record indicates that the County found the proposed property unsuitable for a cell tower because a local ordinance prohibited storage facilities from being operated on the same property. The Board of Commissioners and Zoning Appeals Board based this decision on the Zoning Administrator's decision along with AT&T's arguments in opposition. AT&T points to the many additional questions asked by the County Board of Commissioners as proof that the decision was not rooted in substantial evidence. Though the Board asked these questions, they do not appear to have influenced the ultimate decision, which is likely why any discussion of these topics is omitted from the Board's rationale. The Board considered the Zoning Administrator's interpretation of the County's Zoning Ordinance and AT&T's alternative arguments, which allowed the Board to come to a decision which is clearly communicated in the meeting minutes and included notes.

This is different from a situation where the local board refers broadly to aesthetics, home values, or other generalized expressions of concern as its only basis for denial. Furthermore, "[n]othing in the Telecommunications Act forbids local authorities from applying general and nondiscriminatory standards derived from zoning codes." *Sprint Spectrum, LP v. City of Jeffersonville Bd. of Zoning Appeals,* No. 4:05-cv-154, 2008 WL 833494 (S.D. Ind. Mar. 27, 2008) (quoting *Aegerter,* 174 F.3d at 891).

Having carefully reviewed the record, substantial evidence supported the denial. The

Board explained its rationale with sufficient specificity regarding how and why it concluded the way it did—primarily, violation of a local ordinance. Accordingly, AT&T's motion for summary judgment, construed by this Court as a motion to overturn Defendants' decision, is denied.

## II. Count III – Judicial Review of Zoning Decision

The Monroe County Ordinance at issue provides in relevant part:

> (B) General. Communication support structures and antennas may be permitted in all zoning districts by the County Board following a public hearing. Notice of public hearing shall be published at least 15 days before the hearing in a newspaper of general circulation published in the County. The County Board shall make its decision on all requests within 75 days of the submission of a completed application by the telecommunications carrier.
>
> The following conditions must also be met:
>
>> (1) No public office, or principal repair or storage facilities shall be maintained in connection with the site.
>>
>> (2) The building housing any equipment, shall be designed and constructed to conform to the general character of the neighborhood or area.
>>
>> (3) Landscaping and Buffer Areas must be a minimum of a six foot fence or wall with a ten-foot planting screen around the outside, fenced area. Shrubbery and trees must be not less than five feet in height with expected growth of at least 10 feet. The screens must be planted within 30 days after support structure is completed.
>>
>> (4) Antennas, attached to a communication support structure or other tall structures (e.g., smokestack, water tower, or building) that do not exceed the height of the structure by more than 15 feet, and support structures 65 feet or less in height owned by an amateur radio operator licensed by Federal Communication Commission, will be a permitted use.

Monroe County Code of Ordinances § 40-9-3(B).

AT&T argues that Defendants denied its application under an unreasonable interpretation of the Ordinance. According to AT&T, its interpretation of the Ordinance—that self-storage businesses are only "maintained in connection with" telecommunications facilities when they are related or operated by the same owner on the same plot of land—is the correct and reasonable interpretation. Parsing the Zoning Code's definition of "site," AT&T notes that the term is synonymous with the only defined term "lot," which is defined as, "[a] tract of land intended as a unit for the purpose (whether immediate or future) of transfer of ownership or development." Monroe County Zoning Code of Ordinances § 40-1-8. Further, "a 'lot' may not coincide with a lot of record." *Id.* at § 40-1-9. Thus, AT&T reasons that the term "site" only applies to the leased portion, not the entire plot of land. Moreover, AT&T argues that, even if Defendants reasonably interpreted the language of the Ordinance, the rationale behind such a restrictive reading is unreasonable as there is no purpose in preventing telecommunications facilities on the same lot as wholly unrelated storage facilities.

Alternatively, Defendants contend that the County Zoning Administrator correctly interpreted the Ordinance. Specifically, Defendants contest the characterization of the property at issue as not a storage facility, but rather, a small section of leased property on which a storage facility independently operates. Further, Defendants disagree with AT&T's understanding of the term "in connection with" appearing in the Ordinance. Defendants take the position that, because the cell tower would be located on a portion of a site owned by a landlord who also operates a storage facility, such facility is operated in connection with the proposed cell tower site. Further, Defendants contend that the words "site" and "parcel" are synonymous so its rationale in determining that the term "site" applies to the entire plot of

land versus just a portion is reasonable.

Pursuant to Illinois Law, under the Counties Code, "[a]ny decision regarding a facility by the county board or a county agency or official shall be supported by written findings of fact," moreover, the reviewing court shall "review the reasonableness of any adverse decision and the plaintiff shall bear the burden of proof, but there shall be no presumption of the validity of the decision." 55 ILCS 5/5-12001.1(f)(9). Because the underlying rationale for denying AT&T's application was an interpretation of a local ordinance, the Court can determine whether the Board's interpretation was indeed reasonable.

The Court declines to perform an in-depth analysis regarding the Board's interpretation of the Ordinance. Under a reasonableness standard, Defendants provide ample support for their interpretation, and their construction of the Ordinance does not run afoul of the typical canons of statutory construction. The Court denies AT&T's motion for summary judgment as to Count III.

### III.     Count IV – Violation of 55 ILCS 5/5-12001.1

AT&T maintains that summary judgment is proper because Defendants' denial of the application overreached the power conferred to the County by Illinois state law. Defendants' interpretation of the Ordinance, according to AT&T, conflicts with multiple provisions of the Telecom Facilities Statute and, therefore, the Ordinance is preempted. Specifically, AT&T urges that Illinois's statute prevents a county from prohibiting multiple structures or uses on a zoning lot and that the proposed tower is expressly permitted by the statute (referencing 55 ILCS 5/5-12001.1(f)(2) and (g)).

On the other hand, Defendants argue that the Ordinance does not violate the Illinois Telecom Facilities Statute and disagrees with AT&T's interpretation of the statute as applied

to the Ordinance. According to Defendants, the statute prohibits general restrictions of multiple uses on a zoning lot. The Ordinance does not prohibit multiple uses generally, rather, it prohibits specific uses like placement of a cell tower where storage facilities operate. Further, Defendants urge that adopting AT&T's interpretations would defy the express language in the statute conferring power to county boards to regulate the location of telecommunications facilities. Moreover, while the Illinois Telcom Facilities Statute permits a tower based on size and proximity to residential areas, Defendants argue the statute does not mandate approval of such towers.

The Illinois Telecom Facilities Statute, 55 ILCS 5/5-12001.1(f)(2), provides in relevant part: "[a] facility may be located on the same zoning lot as one or more other structures or uses without violating any ordinance or regulation that prohibits or limits multiple structures, buildings, or uses on a zoning lot."

Moreover, Section (g) contains additional provisions applying to counties with a population of less than 180,000, such as Monroe County, including that:

(1) A facility is permitted if its supporting structure is a qualifying structure or if both of the following conditions are met:

> (A) the height of the facility shall not exceed 200 feet, except that if a facility is located more than one and one-half miles from the corporate limits of any municipality with a population of 25,000 or more the height of the facility shall not exceed 350 feet; and
>
> (B) the horizontal separation distance to the nearest principal residential building shall not be less than the height of the supporting structure; except that if the supporting structure exceeds 99 feet in height, the horizontal separation distance to the nearest principal residential building shall be at least 100 feet or 80% of the height of the supporting structure, whichever is greater. Compliance with this paragraph shall only be evaluated as of the time that a building permit application for the facility is submitted. If the supporting structure is not an antenna tower this paragraph is satisfied.

55 ILCS 5/5-12001.1(g).

AT&T's interpretation of Section (f)(2) is well-taken, however, the Court finds that Monroe County's Ordinance does not violate the section. The Ordinance states, "No public office, or principal repair or storage facilities shall be maintained in connection with the site." This is not a prohibition against multiple structures, buildings, or uses on a zoning lot. In fact, the zoning lot that AT&T seeks to build its tower on allows multiple structures, buildings, and uses. Instead, the Ordinance prohibits specific operations maintained in connection with a telecommunications site, which is different. AT&T conceded as much when it argued at the August 3 hearing that the Ordinance intends to prevent telecommunications carriers from maintaining significant additional operations aside from the telecommunications facility (Doc. 20, ¶ 20).

The Court is not persuaded by AT&T's construction of Section(g). Primarily, AT&T's interpretation leads to an absurd result. *See Hubble v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District,* 238 Ill.2d 262, 345 Ill.Dec. 44, 938 N.E.2d 483, 497 (2010) ("[A] court construing the language of a statute will assume that the legislature did not intend to produce an absurd or unjust result."). To read Section (g) as AT&T suggests would completely eliminate any power or discretion a county has in approving or denying *location* of cell towers or facilities that meet these size and general structural requirements. A facility that meets the requirements in Section (g) may be permitted, but the provision does not suggest that a facility can be placed in any location where the facility could meet these specifications. Under such an interpretation, any telecommunications provider could dictate where a facility goes so long as it complies with these physical requirements. This result is indeed absurd considering the edict in 55 ILCS 5/5-12001.1(a) stating, "the county board or

board of county commissioners of any county shall have the power to regulate the location of the facilities."

    a. **Timing**

Another issue AT&T raises in connection with this claim is timing. Pursuant to Illinois law, a county board must hold a hearing for eligible telecommunication site applications no later than 75 days after submission. 55 ILCS 5/5-12001.1(g)(2). If the county fails to do so, the application shall be deemed approved. *Id.* Here, as the first hearing occurred 206 days after the application submission, AT&T argues that the application should be deemed approved.

Without denying a violation of the timing requirements, Defendants argue that AT&T failed to properly raise this issue in the Complaint. Therefore, they were without notice as to such claim prior to summary judgment. As such, Defendants contend the purported timing defect should not be considered. In contravention to this argument, AT&T argues that its Complaint reserved this argument in stating, "The timeliness and propriety of the County's adverse decision concerning AT&T's facility is subject to de novo judicial review without any presumption of validity." (Doc. 1, ¶ 58).

The Court disagrees with AT&T that its complaint sufficiently alleged improper timing in the issuance of the Board's decision. The only paragraph in the Complaint that references timing is a legal conclusion regarding the standard with which the Court should review the timing and propriety of the denial. While plaintiffs may alter their original legal theories as a case naturally progresses, factual theories must be raised in the complaint. *Chessie Logistics Company v. Krinos Holdings, Inc.*, 867 F.3d 852, 859 (7th Cir. 2017). An attempt to adjust the factual basis for a claim at summary judgment may be construed as a plaintiff's attempt to amend its complaint. *Id.* at 860. Where a new legal theory is raised at summary

judgment, a court should consider the consequences of allowing the plaintiff's new theory before electing to do so. *Id.* AT&T's new theory as to timing involves both fact and law. Both the decision to allow amendment or to allow a new legal theory involve consideration of whether such allowance would cause unreasonable delay, create costs and difficulties in defending the suit, or unfairly harm the defendant. *Id.; see also Whitaker v. Milwaukee County, Wisconsin,* 772 F.3d 802, 808-09 (7th Cir. 2014); *see also Prayitno v. Nextep Funding LLC,* No. 17 C 4310, 2020 WL 3414955, at *4-5 (N.D. Ill. June 22, 2020).

AT&T's complaint did not allege specific facts supporting improper timing, albeit the facts around timing of the hearings and subsequent decisions were generally known from the Complaint. Other than its summary judgment motion after the close of discovery, AT&T has not otherwise signaled its pursuit of a theory of improper timing. While the introduction of a new factual or legal theory at such a late stage of the case may create delay or expense, here, the new theory should not require additional discovery and would not cause Defendants undue burden to defend. The Court, in its discretion, will allow amendment, post summary judgment, of the Complaint to encompass this theory. Further, the parties may request a temporary reopening of discovery if necessary. Thus, AT&T is granted leave to amend its Complaint as to this issue on or before **October 14, 2022.**

## Conclusion

For the reasons set forth above, the Motion for Summary Judgment (Doc. 23), construed by the Court as a motion to overturn the Board's decision, filed by Plaintiff New Cingular Wireless PCS, LLC is **DENIED**. The County's decision is affirmed as to Counts I and III. Plaintiff is granted leave to amend its Complaint as to the timing claim under Count IV on or before **October 14, 2022.** Further, the case proceeds on Count II.

The Court will set a status conference by separate order for the purpose of discussing the next steps needed to bring this action to resolution.

**IT IS SO ORDERED.**

DATED:   September 30, 2022

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**