IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NEW CINGULAR WIRELESS PCS, LLC, d/b/a AT&T MOBILITY,<br><br>                  **Plaintiff,**<br><br>v.<br><br>MONROE COUNTY BOARD OF COMMISSIONERS and MONROE COUNTY BOARD OF ZONING APPEALS,<br><br>                  **Defendants.** | Case No. 3:20-CV-01327-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff New Cingular Wireless PCS, LLC d/b/a AT&T Mobility ("AT&T") initiated this action against Defendants Monroe County Board of Commissioners ("Board of Commissioners") and Monroe County Board of Zoning Appeals ("Zoning Appeals Board") (collectively "the County") following a denial of its wireless communications facility site request. After identifying deficiencies in its wireless network, AT&T sought to strengthen its coverage and submitted a zoning application for a proposed tower in Monroe County, Illinois, on April 12, 2019.

In the application, AT&T proposed a location for a 155-foot monopole tower with accompanying telecommunications equipment on a leased, fenced-in portion of land at 1332 Valmeyer Road (parcel pin number 04-20-200-002-000). Under Monroe County Zoning Code, the proposed land is zoned as MB2, which permits communications facilities. But the owner of the proposed plot of land independently maintains a self-storage facility on another area

of the land. Monroe County has a zoning ordinance providing that, "No public office, or principal repair or storage facilities shall be maintained in connection with the site." Monroe County Zoning Code § 40-9-3(B)(1).

To consider AT&T's application, the Board of Commissioners convened two public hearings on November 4, 2019, and August 3, 2020. The Board of Commissioners adopted the Zoning Administrator's conclusion that the county ordinance prohibited AT&T from installing its proposed tower because "a storage facility is maintained in connection with the building site." AT&T appealed. On September 9, 2020, the Zoning Appeals Board held a public hearing on the appeal. The Zoning Appeals Board voted to deny the appeal and affirm the Zoning Administrator's interpretation. At another public meeting on October 5, 2020, the Board of Commissioners announced its denial of AT&T's application after a vote. Finally, the Zoning Appeals Board issued a formal written decision on November 10, 2020, reflecting the ultimate denial of AT&T's application.

AT&T alleges that the County's decision violates the Federal Telecommunications Act (Counts I and II) and requires judicial review (Count III), and that the relevant county ordinance, as interpreted, violates the Illinois Counties Code (Count IV). AT&T previously moved for summary judgment as to Counts I, III, and IV. (Doc. 23). The Court denied that motion (Doc. 38), but granted AT&T leave to amend its complaint regarding issues of timing. (*Id.*). As such, AT&T filed an Amended Complaint. (Doc. 42).

AT&T now seeks summary judgment with respect to Counts III and IV of its Amended Complaint, specifically on the issue that the Board of Commissioners failed to comply with the timing requirements under the Illinois Counties Code and the Monroe County Code of Ordinances. (Doc. 51). Defendants filed a response in opposition contending

that AT&T waived this argument, and at the very least, factual issues surrounding waiver preclude summary judgment. (Doc. 54). AT&T filed a timely reply. (Doc. 56).

## LEGAL STANDARD

This action arises as a review of a zoning board denial. As described in the Court's Order on AT&T's first motion for summary judgment, AT&T raised this issue in a motion for summary judgment, but the standard of review does not match that of Rule 56—whether a genuine issue of material fact exists. Rather, the County's decision is reviewed as to whether it is supported by "substantial evidence." FED. R. CIV. P. 56(a); 47 U.S.C. § 332(c)(7)(B)(iii) ("Any decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record."). Essentially, the district court serves in an appellate function where the trial of sorts has already occurred through the local board's decision. *See PrimeCo Personal Communications v. City of Mequon,* 242 F. Supp. 2d 567, 574 (E.D. Wis. 2003), *aff'd*, 352 F.3d 1147 (7th Cir. 2003). As with the standard of review used by courts to review an administrative agency's decision, only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" is required. *VoiceStream Minneapolis, Inc. v. St. Croix County,* 342 F.3d 818, 830 (7th Cir. 2003); *see also Aegerter v. City of Delafield, Wisconsin*, 174 F.3d 886, 889 (7th Cir. 1999).

## DISCUSSION

AT&T points to the Illinois Counties Code, 55 ILCS 5/5-12001.1(g)(2), and the Monroe County Code of Ordinances, Section 40-9-3(B), to argue that, because the Board of Commissioners failed to hold a hearing or render a decision on its application within 75 days of submission, the application must be deemed approved. AT&T emphasizes that it

submitted a completed application on April 12, 2019. The Board of Commissioners held the first hearing for AT&T's application on November 4, 2019—206 days later. A second hearing, held on August 3, 2020, occurred 479 days after the initial application submission. The Board of Commissioners voted to deny AT&T's application 542 days after submission, on October 5, 2020. AT&T argues that the Board of Commissioners failed to act on its application within 75 days after submission, and thus the application should have been deemed approved pursuant to Illinois law.

In response, the County argues that AT&T waived the issues of the timeliness of the County's decision. The County urges that AT&T certainly knew of the timeliness issue throughout the proceedings with the County and in this Court. Criticizing AT&T's argument as ironic, the County highlights that Plaintiff accuses it of failing to take swift action, when this timing argument comes late in the game. Based on AT&T's pre-litigation conduct, including emails as to the timing and scheduling of hearings, AT&T never intended to rely on the 75-day limitation and acquiesced to an extension of the process beyond that time. Moreover, according to the County, AT&T continued to participate in the process long after the 75-day window expired. To support its position on waiver, the County cites *Wald v. Chicago Shippers Ass'n*, 529 N.E.2d 1138, 1148 (Ill. App. Ct. 1988), and *Saverslak v. Davis–Cleaver Produce Co.*, 606 F.2d 208, 213 (7th Cir. 1979), arguing that a party engaging in conduct inconsistent with strict compliance cannot later complain of the lack of strict compliance.

AT&T filed a reply urging that the County's waiver argument is rooted in inapposite contract law. In AT&T's view, statutorily imposed time limits or deadlines cannot be waived. AT&T argues that the time limitation within the Illinois Counties Code is jurisdictional in nature with respect to the power to regulate telecommunication tower sites. In support of

this argument, AT&T relies on *Ogle County Bd. on Behalf of County of Ogle v. Pollution Control Bd.*, 649 N.E.2d 545 (Ill. 1995) (abrogated on other grounds by *Maggio v. Pollution Control Bd.*, 9 N.E.3d 80 (Ill. App. Ct. 2014)).

Turning to the relevant statute, Illinois empowers county governments to regulate telecommunications facilities under the Counties Code. 55 ILCS 5/5-12001.1. A county's regulatory powers are conferred and limited by the Illinois Counties Code, which dictates:

> [T]he county board or board of county commissioners of any county shall have the power to regulate the location of the facilities…of a telecommunications carrier or AM broadcast station established outside the corporate limits of cities, villages, and incorporated towns that have municipal zoning ordinances in effect. The power shall only be exercised to the extent and in the manner set forth in this Section.

55 ILCS 5/5-12001.1(a). Under the Illinois Counties Code, a county board must hold a hearing for eligible telecommunication site applications no later than 75 days after submission. If the county fails to do so, the application shall be deemed approved. Section 5-12001.1(g)(2) states:

> The county board may give its approval after one public hearing on the proposal, but only by the favorable vote of a majority of the members present at a meeting held **no later than 75 days after submission of a complete application by the telecommunications carrier. If the county board fails to act on the application within 75 days after its submission, the application shall be deemed to have been approved.** No more than one public hearing shall be required.

55 ILCS 5/5-12001.1(g)(2) (emphasis added). Aside from the Illinois statute, Monroe County also adopted a zoning ordinance that provides in relevant part:

> (B) **General**. Communication support structures and antennas may be permitted in all zoning districts by the County Board following a public hearing. Notice of public hearing shall be published at least **fifteen (15) days** before the hearing in a newspaper of general circulation published in the County. The County Board shall make its decision on all requests within **seventy-five (75) days** of the submission of a completed application by the telecommunications carrier.

Page 5 of 8

Monroe County Code of Ordinances § 40-9-3(B) (emphasis in original). Interestingly, this ordinance does not imagine the result for failure to issue a decision within the allotted time.

Here, the record is clear that the County failed to comply with the 75-day mandate in both the Illinois Counties Code and its own zoning ordinance. It is undisputed that AT&T submitted a complete application on April 12, 2019. The Board of Commissioners convened the first hearing November 4, 2019, held a second hearing on August 3, 2020, and conducted a vote on October 5, 2020. The first hearing occurred 206 days after application submission, in obvious excess of 75 days. Of course, the second hearing and eventual vote occurred much later still.

The question now becomes, what does this failure to comply with the timing requirement mean? According to AT&T, the Illinois Counties Code dictates its meaning—the application shall be deemed to have been approved. According to the County, AT&T waived any timeliness argument, and its conduct demonstrates acquiescence to any delay. The Court agrees with AT&T.

As AT&T points out in its reply brief, the County supports its waiver argument with cases rooted in principles of contract law. That law is of no help here. Statutory provisions conferring and limiting authority of a county government cannot be equated with a contract between two parties. The County's waiver argument fails.

In support of its theory, AT&T references Illinois case law holding that a county board lacked authority to decide a proposal where the board failed to provide notice within the time allotted by statute. *See Ogle County Bd. on Behalf of County of Ogle v. Pollution Control Bd.*, 649 N.E.2d 545 (Ill. 1995), abrogated on other grounds by *Maggio v. Pollution Control Bd.*, 9 N.E.3d 80, 552-553 (Ill. App. Ct. 2014). In that case, an Illinois Appellate Court reasoned that

a timeliness challenge related to the notice provision could not be waived, because the county's failure to comply with the statutory notice period would have rendered the board's approval void. *Id.* AT&T contends that the Counties Code expressly limits the County's power to regulate locations of telecommunication facilities and such power must be exercised to the extent and manner set forth in the code. Section 5/5-12001.1(g)(2) limits a county's power by mandating that a county act on an application within 75 days. Thus, AT&T reasons that if a County acts on an application outside that 75-day window, it acts outside its conferred power. Any decision rendered outside of that power is void. The Court is persuaded by this logic and applies the same. The County acted outside of its authority after the 75-day window lapsed. Neither the County nor AT&T has the ability to waive an express provision limiting the power conferred by statute and the legislature.

Moreover, the Illinois legislature also did not expressly provide for modification of the imposed deadline by mutual agreement in the Counties Code as in other statutes. For example, the Illinois Plat Act requires the city council, village board, or county board to review any application for plat approval and issue a written decision not later than 90 days from the date the application is received, but expressly permits, "The 90 day period may be changed by mutual agreement." 765 ILCS 205/2. Likewise, if the 90-day window or agreed-upon period lapses with no written response, the municipal or corporate authorities may approve the plat. *Id.*

The Court must presume that the legislature, in enacting different statutes, acted rationally and with full knowledge of other statutes and judicial decisions concerning existing law. *Village of Chatham v. County of Sangamon*, 814 N.E.2d 216, 222-23 (Ill. App. Ct. 2004). No similar language exists in relation to 55 ILCS 5/5-12001.1(g)(2). Notably, while the

Plat Act is unrelated and provided only as an example, the consequence for failure to act within the allotted time period is the same—assumed approval. The Illinois legislature has imposed language allowing for modification or agreement to extend a deadline, but did not apply such language in the Illinois Counties Code provision at issue. This also persuades the Court that AT&T could not "waive" or modify the imposed time limitation.

Here, the statutory provision in the Illinois Counties Code requiring the County to act upon a completed application within 75 days is dispositive. When the 75-day window lapsed, AT&T's application was deemed to have been approved. Any decision by the County following the 75-day window falls outside of its conferred authority and is void.

## CONCLUSION

For the reasons set forth above, the Motion for Summary Judgment (Doc. 51) filed by Plaintiff New Cingular Wireless PCS, LLC is **GRANTED**. The parties are **DIRECTED** to confer and file a Status Report indicating any other issues necessary for the Court to resolve in light of this Order on or before **October 13, 2023.**

**IT IS SO ORDERED.**

**DATED:** September 29, 2023

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**